IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

KATHERINE TOMBLIN, as wife of )
Steven Tomblin deceased wage earner, )
)
    Plaintiff, )
)
v. ) CASE NO. 3:17cv635-GMB
)
NANCY A. BERRYHILL, Acting ) [WO]
Commissioner, Social Security )
Administration, )
)
    Defendant. )

## **MEMORANDUM OPINION AND ORDER**

Steven Tomblin ("Tomblin") applied for supplemental security income and disability insurance benefits under the Social Security Act, alleging a disability onset date of June 4, 2013. Tomblin's claim was denied at the initial administrative level. Tomblin requested a hearing before an Administrative Law Judge ("ALJ") and the ALJ found him not disabled on November 4, 2015. Doc. 13-2 at 9. The Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner. Doc. 13-2 at 2. The Commissioner's final decision is subject to judicial review. 42 U.S.C. §§ 405(g) & 1383(c)(3). Tomblin died on March 30, 2017 and his wife, Katherine Tomblin (the "Claimant"), was substituted as the party to pursue his claim.

Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of the undersigned United States Magistrate Judge. Docs. 8 & 9. Based upon a review of the evidentiary record, the

parties' briefs, and the relevant authority, the court finds that the Commissioner's decision is due to be AFFIRMED, as set forth below.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. The court

must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A claimant bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

3

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant performing substantial gainful activity?
(2) Does she have a severe impairment?
(3) Does she have a severe impairment that equals one of the specific impairments set forth in 20 C.F.R. Pt. 404, Sub pt. P, App. 1?
(4) Is the claimant able to perform past relevant work? and
(5) Is the claimant unable to perform other work given her residual functional capacity (RFC), age, education, and work experience?

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Tomblin was 44 years old on the alleged disability onset date. He had a high school education and past relevant work as an electrician.

During the administrative proceedings, the ALJ ordered a consultative exam. Dr. Chivukula performed the examination and concluded that there was a high likelihood that Tomblin has cervical degenerative disc disease with right radiculopathy, but could perform work activity at a light exertional level with restrictions for the right upper extremity and

4

with no restrictions on the left upper extremity or lower extremities. Doc. 13-11 at 38 & 40. The report also recommended a nerve conduction study and electromyography examination including the paraspinal muscles. Doc. 13-11 at 38. Dr. Chivukula also noted that Tomblin had comorbid conditions for which he underwent balloon angioplasty and a stent placement but nevertheless continued to smoke three quarters of a pack of cigarettes per day. Doc. 13-11 at 38. The ALJ assigned significant weight to the examination. Doc. 13-2 at 21.

The ALJ found that Tomblin had the following severe impairments: coronary artery disease with a history of angina and myocardial infarction, hypertension, obesity, chronic obstructive pulmonary disease ("COPD") with tobacco abuse, degenerative changes of the shoulders and of the cervical spine with radicular symptoms, degenerative disc disease of lumbar spine, and a history of anxiety disorder. Doc. 13-2 at 14. The ALJ found that Tomblin's impairments did not individually or collectively meet or equal any of the impairments listed in 20 C.F.R. pt. 404, Sub pt. P, App 1. R. 133. Doc. 13-2 at 14. The ALJ found that Tomblin retained the RFC to perform a range of light work, occasionally stooping and climbing ramps and stairs—but not ladders, ropes, or scaffolding. He could perform tasks not requiring crouching, kneeling, and crawling. He also could perform tasks not involving overhead reaching on the right and not requiring more than occasional reaching in other directions with the right upper extremity. Tomblin could perform tasks requiring no more than frequent handling and fingering. He could perform tasks not involving exposure to temperature extremes or workplace hazards such as unprotected heights or dangerous moving machinery. Tomblin could perform tasks not involving

operation of vibrating tools or equipment or operation of motorized vehicles. He could understand and carry out short, simple instructions consistent with the performance of simple, unskilled work of a routine, repetitive nature. Tomblin could make simple, work-related decisions, but could not carry out complex instructions and could not engage in long-term planning, negotiation, or independent goal-setting. He could tolerate occasional interaction with supervisors and co-workers, but no more than superficial interaction with members of the general public. Doc. 13-2 at 16–17. Ultimately, the ALJ concluded that Tomblin could not perform past relevant work but could perform other work that exists in significant numbers in the national economy, and therefore Tomblin was not disabled within the meaning of the Social Security Act. Doc. 13-2 at 23–24.

After completion of the administrative process, Tomblin suffered two myocardial infractions in 2017, the treatment of which Claimant presents as new evidence to this court. Doc. 11 at 9.

## IV. DISCUSSION

Tomblin presents two issues for review: (1) the Commissioner's decision should be reversed because the ALJ failed to fulfill his duty to develop the record as recommended by the examining neurologist and (2) the Commissioners' decision should be reversed and remanded based upon new and material evidence. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. Having carefully considered the parties' arguments, the record, and the applicable legal authority, and for the reasons set forth below, the undersigned finds that the Commissioner's decision is due to be AFFIRMED.

## A. Development of the Record

Claimant argues that although Tomblin was referred for a consultative examination, the ALJ did not address Dr. Chivukula's recommendation of nerve conduction studies and electromyography examination of the upper extremities including the paraspinal muscles. Doc. 13-11 at 38. It is the ALJ's duty to investigate the facts and develop arguments both for and against granting benefits. *See, e.g.*, *Sims v. Apfel*, 530 U.S. 103, 110 (2000). To that end, Claimant notes that Dr. Chivukula contacted the disability specialist to attempt to order the examination but was not successful. Doc. 13-11 at 38. Claimant argues that it was legal error for the ALJ to give the report great weight and issue an unfavorable opinion when Dr. Chivukula recommended additional tests, particularly where the ALJ pointed to the lack of objective evidence of pain.

It is well established that the ALJ has a basic duty to develop a full and fair record. *See, e.g.*, 20 C.F.R. § 416.912(d) (stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application"). This obligation applies regardless of whether the claimant is represented by counsel. *Vesy v. Astrue*, 353 F. App'x 219, 224 (11th Cir. 2009). A claimant, however, "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). "The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r,* 496 F.3d

7

1253, 1269 (11th Cir. 2007). In evaluating the necessity for remand on this basis, courts look to see "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995).

The first issue before this court, therefore, is the effect of the consultative examiner's recommendation of tests in a report reviewed by the ALJ. The Eleventh Circuit has been presented with a case in which a consultative doctor recommended an additional consultative examination. *See Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). The court did not base its decision on that issue, however, but explained in dicta that an ALJ commits reversible error by not ordering a consultative examination "when such an evaluation is necessary for him to make an informed decision." *Id.* The Eleventh Circuit also has explained, specifically with respect to the absence of testing, that even if the absence of a test "made it impossible for the ALJ to determine with absolute certainty that [a claimant] does not suffer from [a disease] . . . the statute does not require absolute certainty; it requires only substantial evidence to sustain the Secretary's findings." *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). Distilling these cases, the failure of an ALJ to order testing recommended by a consultative examiner is cause for remand only if the standard for failing to develop the record otherwise is met. In other words, an ALJ is not required to follow a recommendation for additional testing as long as he develops the record appropriately.

Another district court in this Circuit recently analyzed a claim similar to the one in this case, where a claimant argued that the ALJ should have arranged for more testing. *See Carey v. Berryhill*, 2018 WL 2972346, at *7 (N.D. Fla. June 13, 2018). The *Carey* court

8

reasoned that if the claimant "contends that testing would have shown that any of her impairments does meet the criteria of a listing, her claim is wholly speculative, but in any event it is not the Commissioner's obligation to 'build a case' for Plaintiff." *Id.* This court is persuaded by the reasoning that speculative results of testing are not sufficient to demonstrate unfairness or prejudice from an evidentiary gap.

Additionally, in *Vesy*, the claimant contended that the ALJ should have recontacted doctors and ordered additional consultative examinations. *Vesy v. Astrue*, 353 F. App'x 219, 224. The Eleventh Circuit noted that the "ALJ may order additional consultative examinations if the medical evidence submitted by the claimant does not provide enough information about an impairment to determine whether the claimant is disabled." *Id.* The court also explained that the ALJ is not required to order additional examinations if the evidence in the record is sufficient to allow for an informed decision. *Id.* The *Vesy* court held that the ALJ was not required to order additional consultative examinations of that claimant because the record already contained sufficient evidence for the ALJ to make an informed decision on whether the claimant was disabled. *Id.* at 225.

In this case, the Commissioner points out that the ALJ assigned significant weight to the consultative examination of Dr. Chivukula and found that Dr. Chivukula's findings were supported by his examination results. As a result, the claimant can only speculate that additional testing might have produced evidence to support her claim.

The ALJ assigned significant weight to Dr. Chivukula's examination because it was "corroborative of the ultimate findings of this decision, which show the claimant able to perform work activities in accordance with the above stated residual functional capacity."

Doc. 13-2 at 21. In addition to the significant weight given to Dr. Chivukula's findings, the ALJ also engaged in an extensive review of the medical evidence in the record, including reports of pain, diagnoses, hospitalization records, a neurologic examination, and treatment for back pain with medication. Doc. 13-2 at 18–19. The court also notes that Dr. Chivukula, the consultative examiner, did not express an inability to form an opinion without the referenced tests. Doc. 13-11 at 38. Therefore, because the ALJ based his decision on Dr. Chivukula's opinion and findings, combined with other medical evidence, there is no evidentiary gap. Further, because there is nothing in the record which indicates that the additional testing referenced by Chivukula would have resulted in evidence favorable to Tomblin, any prejudice or unfairness is merely speculative. *Brown*, 44 F.3d at 935.

In short, the court concludes that the ALJ was not required to order additional tests because the record contained sufficient evidence for an informed decision regarding whether the claimant was disabled, *see Vesy v. Astrue*, 353 F. App'x at 224, and the claimant has failed to show clear prejudice or unfairness from an evidentiary gap. *Brown*, 44 F.3d at 935.

**B.     New Evidence**

In her brief, Claimant relies on evidence of treatment of heart attacks Tomblin suffered in 2017—after the ALJ and the Appeals Council rendered their decisions. While Claimant also discusses evidence of treatment for mild coronary artery disease in 2013 and a heart attack in 2015, it is unclear from her brief whether she challenges the Appeals Council's denial of review based on that evidence, or whether the citation to the 2013 and

2015 evidence is merely background for her argument that this court should remand for consideration of the 2017 evidence never presented in the administrative proceedings. Significantly, the claimant specifically references sentence six of 42 U.S.C. § 405(g). Doc. 11 at 10. Therefore, it is apparent that Claimant does not pursue remand under sentence four based on the Appeals Council's denial of review, but instead seeks remand pursuant to sentence six for consideration of the 2017 evidence.[1] *See Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 802 (11th Cir. 2008) (noting that a "sentence four remand, as opposed to a sentence six remand, is appropriate when 'evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record'").

Turning to the question of remand under sentence six of 42 U.S.C. § 405(g), a court is permitted to remand a case to the Commissioner for consideration of new evidence. *Ingram v. Comm'r Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007). However, to be entitled to remand to the Commissioner, Claimant must show that (1) new, non-

---

[1] The Commissioner apparently has interpreted Claimant's claim as a challenge to the Appeals Council's decision not to consider new evidence in denying review and as a request for a sentence four remand. Under that standard, the Appeals Council "must consider new, material, and chronologically relevant evidence" that the claimant submits. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). The Commissioner argues that evidence of Tomblin's health developed after the ALJ's decision but presented for the first time in the administrative process to the Appeals Council, was determined not to be chronologically relevant and Claimant has not shown it to have any bearing on Tomblin's condition before the date of the ALJ's decision. Doc. 13-2 at 3–4. The court agrees with this analysis. A medical examination that takes place after issuance of the ALJ's decision may be chronologically relevant if it relates back to the date of the ALJ's decision, *Yates v. Comm'r*, 706 F. App'x 588, 594 (11th Cir. 2017), but Claimant has not made that showing in this case. To the extent Claimant is relying on evidence from 2013, the evidence of mild coronary artery disease, Doc. 13-8 at 9, is consistent with the ALJ's determination that Tomblin had a severe impairment of coronary artery disease, and therefore this evidence is not material. Doc. 13-2 at 15. Accordingly, if Claimant intended to seek a sentence four remand based on the Appeals Council's decision, she is not entitled to that relief.

cumulative evidence exists; (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result; and (3) good cause exists for the claimant's failure to submit the evidence at the appropriate administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). Accordingly, sentence six encompasses only those instances in which "the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Carson v. Comm'r of Soc. Sec.*, 373 F. App'x 986, 988 (11th Cir. 2010).

In this case, Claimant's argument centers on evidence that Tomblin suffered a February 2017 heart attack and passed away after a March 2017 heart attack. That evidence was not presented to the Appeals Council because the evidence was not in existence at the time of the Appeals Council's decision on January 31, 2017. Doc. 13-2 at 7. The evidence of a heart attack occurring after the Appeals Council's review is new and, therefore, good cause exists for not submitting it during the administrative review. *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985) ("Good cause for failing to present evidence earlier may exist where, as here, the evidence did not exist at the time of the administrative proceeding."). The issue before the court, therefore, is the materiality of the evidence.

The mere fact that evidence comes into existence after the ALJ's decision does not mean that the findings cannot be material, if the evidence relates to the relevant period. *Cf. Washington*, 806 F.3d at 1320. However, the Eleventh Circuit in an unpublished opinion has rejected a sentence six remand based on new evidence in the form of tests conducted several months after the ALJ's decision. *See Gallina v. Comm'r*, 202 F. App'x

387, 389 (11th Cir. 2006). The court considered the timing of the evidence and explained that the evidence was "reflective of [a] worsened condition at the time, rather than the extent of her disability prior to the decision, which was well-documented through other medical evidence." *Id.* Similarly, in this case, the evidence of heart attacks suffered by Tomblin in 2017 may be evidence of the severity of his condition as it existed years after the ALJ's decision in 2014, but there is nothing in the evidence showing the same level of severity at the time of the ALJ's decision. Here, as in *Gallina*, the better interpretation of this evidence is that is reflects and is consistent with a worsening condition. *See id.* Also, as in *Gallina*, the ALJ based his decision on contemporaneous medical evidence. *Id.* This court concludes, therefore, that Claimant has not established materiality and that remand for consideration of the 2017 evidence is not warranted.

## V. CONCLUSION

Based on the foregoing, it is ORDERED that the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE this 18th day of October, 2018.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE